**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREA C. DELLAPENNA-GRAJZL, | ) | CASE NO. 1:22-CV-01483-BYP |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY | ) | CARMEN E. HENDERSON |
| ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

## I.    Introduction

Plaintiff, Andrea C. DellaPenna-Grajzl ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Period of Disability ("POD") and Disability Insurance Benefits ("DIB"). This matter is before the Court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that that the Commissioner's final decision be AFFIRMED.

## II.    Procedural History

Claimant filed applications for POD and DIB on December 10, 2019, alleging a disability onset date of August 4, 2017. (ECF No. 8, PageID #: 42). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 8, PageID #: 42). On November 4, 2020, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 8, PageID #: 42). The ALJ issued a written decision finding Claimant was not disabled on March 10, 2021.

(ECF No. 8, PageID #: 39). The ALJ's decision became final on June 23, 2022, when the Appeals Council declined further review. (ECF No. 8, PageID #: 28).

Claimant filed her complaint with the U.S. District Court for the Northern District of Ohio on August 19, 2022 to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 12, 13). Claimant asserts the following assignments of error:

> (1) The ALJ found at Step 3 that Plaintiff's impairments did not meet or equal Listing § 11.09 (A) or (B). This finding lacks support of substantial evidence, because the ALJ failed to give a reasoned explanation of her findings and conclusions in order to facilitate meaningful review.
>
> (2) The ALJ at Step 4 found that Plaintiff had the residual functional capacity to perform sedentary work with additional mental health limitations. This finding lacks support as the ALJ's analysis of Dr. Frye's opinion did not adequately address the evidence and she may not substitute her lay interpretation for that of a medical professional. Further, The ALJ inadequately addressed the KEY Functional Whole Body Assessment and completely failed to articulate the persuasiveness of Dr. Carrabine's opinion.

(ECF No. 10, PageID #: 1198).

### III.    Background

### A.  Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> In terms of the claimant's alleged physical limitations, mental limitations, and symptoms including pain, fatigue, and periods of poor memory and concentration, a review of the record shows that on July 30, 2019 the claimant returned to see Timothy Carrabine, MD, at the Oak Clinic for Multiple Sclerosis. The claimant had been diagnosed with multiple sclerosis in September 2017. She also had a history of psoriasis and migraine headaches. The claimant mentioned that she stopped taking her Otelza for her psoriasis because it worsened her headaches. The claimant complained of short-term cognitive difficulties and fatigue due to the summer heat. On examination, the claimant was alert and cooperative. Her gait

Case: 1:22-cv-01483-BYP  Doc #: 15  Filed:  05/24/23  3 of 29.  PageID #: 1252

was slightly wide-based consistent with some balance difficulties. Her motor strength in the upper extremities and the right lower extremity was normal and motor strength in her left lower extremity was very mildly decreased (not normal, but good). She had 5/5 (normal) grip strength bilaterally. For multiple sclerosis, Dr. Carrabine continued IV Ocrevus (three doses per year). He instructed the claimant to follow with her dermatologist and to see her migraine specialist, who she had not seen for the last year or two. For cognitive difficulties, Dr. Carrabine referred the claimant to Dr. Frye for neuropsychological testing. Dr. Carrabine asked the claimant to return to the clinic in six months (3F/7-12).

On August 29, 2019, the claimant consulted with Zubair Ahmed, MD, at Cleveland Clinic's Headache Clinic. The claimant reported headaches since age 22 and that her headaches now were similar. She reported 25 headaches per month lasting four or more hours. On examination, the claimant was alert, well appearing, and in no acute distress. Her motor strength was good. There was decreased sensation to vibration on the left. Dr. Ahmed recommended Botox (4F/18- 22).

On October 24, 2019, the claimant saw Dr. Ahmed for her first Botox injection. The claimant reported having severe headaches 15 days per month (4F/14-15).

On October 9 and October 31, 2019, the claimant saw Deanna Frye, PhD, for an assessment of neurocognitive functions due to subjective cognitive complaints. The claimant reported short-term memory deficits and mood swings for the past year. The claimant was not taking any psychotropic medications including any medication for her mood concerns. Dr. Frye diagnosed the claimant with mild neurocognitive disorder due to multiple sclerosis, unspecified anxiety disorder, and unspecified depressive disorder (4F/8-14).

[. . .]

On January 30, 2020, the claimant followed up with Lauren Junk, ANP, at the Oak Clinic. The claimant had been taking Lyrica for paresthesia of the legs and she reported significant improvement in the paresthesia. On examination, the claimant was alert and cooperative. Her gait was slightly wide-based consistent with some balance difficulties and she had mild difficulty with balance testing. Her motor strength in the upper extremities and the right lower extremity was normal and motor strength in her left lower extremity was very mildly decreased (not normal, but good). She had 5/5

(normal) grip strength bilaterally. Ms. Junk continued Ocrevus and Lyrica. She restarted Baclofen because the claimant reported some stiffness in her legs and back (3F/2-6).

On February 6, 2020, the claimant saw Dr. Ahmed for her second Botox injection. Since Botox was initiated, the claimant reported only seven headaches per month, described as moderate, and 23 headache free days per month (4F/3-4).

On May 5, 2020, the claimant had a virtual appointment with Dr. Ahmed due to the COVID-19 pandemic. The claimant told Dr. Ahmed that Botox was "effective" for her and she wanted to make an appointment for another Botox injection. Dr. Ahmed scheduled the claimant for an injection and she continued the claimant's rescue medication of Imitrex "as needed" (8F/11-15).

On May 12, 2020, the claimant saw Dr. Ahmed for her third Botox injection (8F/10-11).

On May 21, 2020, the claimant started to treat with Brian Spence, APRN, CNP, of Circle Health. The claimant reported that she had anxiety from "anything" and that she felt depressed at times "but usually not." The claimant reported that she was currently working as a bartender and she lived with her three younger children. On examination, the claimant appeared neat, clean, and appropriately dressed; her demeanor/activity was guarded and cooperative; her speech was normal; her thought process was goal directed, linear, and coherent; there was no abnormal thought content; her mood was depressed although the claimant was adamant that she did not have depression; her affect was flat; her behavior/functioning was calm, pleasant, and with good eye contact; her insight was moderate; and her judgment was moderately impaired. Mr. Spence diagnosed post-traumatic stress disorder and started Prozac 10 mg (15F/37-43).

On June 18, 2020, the claimant followed up with Mr. Spence by telephone. The claimant reported that she started the Prozac two weeks ago and she felt "strange" initially, but not anymore. The claimant reported that her mood was "pretty good" and she had decreased anxiety, but had anxious thoughts. She reported feeling like people were trying to hurt her. On examination, the claimant's demeanor/activity was guarded and cooperative; her speech was normal; her thought process was goal directed, linear, and coherent; her thought content contained paranoia; her mood was "pretty good"; her behavior/functioning was calm and pleasant; her insight was good; and her judgment was not impaired. Mr. Spence increased the claimant's Prozac to 20 mg (15F/33-36).

4

[. . .]

On July 17, 2020, the claimant followed up with Mr. Spence by telephone. The claimant reported "building an immunity" to Prozac. On examination, the claimant's demeanor/activity was cooperative and accessible; her speech was normal; her thought process was goal directed, linear, and coherent; her thought content contained paranoia and auditory hallucinations; her mood was reactive; her behavior/functioning was calm and pleasant; her insight was good; and her judgment was not impaired. Mr. Spence increased the claimant's Prozac to 30 mg (15F/27- 30).

On July 24, 2020, the claimant had a telehealth appointment with Dr. Carrabine. The claimant's last dosing of Ocrevus was on November 1, 2019 and her spring 2020 dose was being delayed due to the pandemic. The claimant reported some increased fatigue and generalized weakness in the last several weeks. Dr. Carrabine noted that recent MRIs of the claimant's brain and cervical spinal cord from July 9, 2020 showed "stability" of the claimant's multiple sclerosis when compared to the prior MRI in March 2018. On July 24, 2020, although the claimant had some gait difficulty due to balance and some general weakness (left side greater than the right), the claimant denied falls or injury and she ambulated "on her own." On examination, the claimant was alert and cooperative. The claimant was scheduled for her next dose of Ocrevus on August 7, 2020. The claimant was also taking Lyrica for some chronic neuropathic pain in her lower extremities secondary to cervical cord lesions of multiple sclerosis and Baclofen "as needed" for stiffness. Dr. Carrabine asked the claimant to follow up with him in six months (17F/3-8; and see 12F/3-6 for the July 9, 2020 MRIs).

On August 13, 2020, the claimant followed up with Mr. Spence by telephone. The claimant reported low motivation and being "crabby" about everything. She continued to report feeling like people were trying to hurt her and hearing people talking about her. The claimant was not working and she was watching her children during the day. On examination, the claimant's demeanor/activity was cooperative and accessible; her speech was normal; her thought process was goal directed, linear, and coherent; her thought content contained paranoia and auditory hallucinations; her mood was "crabby"; her behavior/functioning was calm and pleasant; her insight was good; and her judgment was not impaired. Mr. Spence noted that Prozac 30 mg was not adequately controlling the claimant's post-traumatic stress disorder symptoms so he increased the claimant's Prozac to 40 mg (15F/23-26).

5

[. . .]

On August 18, 2020, the claimant saw Dr. Ahmed for a Botox injection (16F/14-17).

On October 8, 2020, the claimant followed up with Mr. Spence by telephone. The claimant reported that with Prozac "I feel more normal now than I ever have." She denied depression and hallucinations, but she was anxious about the future. On examination, the claimant's demeanor/activity was cooperative and accessible; her speech was normal; her thought process was goal directed, linear, and coherent; the claimant denied hallucinations; her mood was "pretty good"; her behavior/functioning was calm and pleasant; her insight was good; and her judgment was not impaired. Mr. Spence continued Prozac 40 mg (15F/19-22).

(ECF No. 8, PageID #: 48–52).

## B. Opinion Evidence at Issue

There are three relevant expert opinions in this case. Dr. Deanna Frye, Ph.D., authored recommendations on October 31, 2019. (ECF No. 8, PageID #: 343–44, 346). The ALJ summarized Dr. Frye's opinion in her decision:

the claimant is encouraged to reapply for Social Security Disability benefits. Her cognitive and emotional symptoms represent at least a moderate barrier to her ability to consistently engage in full time competitive employment. Her additional physical symptoms from the MS, including her significant daytime fatigue, as well as her additional medical concerns (migraine headaches, vascular problems with her legs) will also further prohibit her ability to successfully engage in full time employment (4F/11).

(ECF No. 8, PageID #: 49).

Jamie Hart, P.T., A.T., P.D.T., and Sherrie Northrup, A.T., authored the another opinion on June 24, 2020, a functional capacity evaluation. (ECF No. 8, PageID #: 1060–69). The ALJ summarized the opinion in her decision:

On June 24, 2020, the claimant attended a functional capacity evaluation conducted by Jamie Hart, PT, AT, DPT, and Sherrie

> Northrup, AT. Mr. Hart and Ms. Northrup determined that the
> claimant can work 5 hours a day; sit for 3 to 4 hours, 40 minute
> duration maximum; stand for 3 to 4 hours, 30 minute duration
> maximum; and walk for 3 to 4 hours, frequent moderate distances;
> postural activities range from 'not at all,' 'minimally occasional,' to
> 'occasional'; occasional grasping with the bilateral hands;
> occasionally lift up to 14.8 pounds; and occasionally carry 27
> pounds on the right and 17 pounds on the left (9F).

(ECF No. 8, PageID #: 50).

Dr. Timothy Carrabine, M.D., M.S.C.S., authored an opinion on September 11, 2020. (ECF No. 8, PageID #: 1080). The opinion was written at the request of Claimant's counsel who asked Dr. Carrabine whether he agreed with the June 2020 functional capacity assessment. (ECF No. 8, PageID #: 1080). Claimant's counsel also asked Dr. Carrabine to indicate whether Claimant's "disability and/or medical impairments have persisted since August 7, 2017 or since [he] began treating [Claimant]." (ECF No. 8, PageID #: 1080). The doctor offered the following response: "I agree with FCE results[. Patient] has multiple sclerosis. Extensive involvement of brain + spinal cord with MS legions. Subsequent difficulties with balance, (as per FCE as well) cognition, depression. Neurogenic bladder, weakness[.]" (ECF No. 8, PageID #: 1080).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 1. The claimant meets the insured status requirements of the Social
> Security Act through December 31, 2023.
>
> 2. The claimant has not engaged in substantial gainful activity since
> July 1, 2019, the amended alleged onset date (20 CFR 404.1571 et
> seq.).
>
> 3. The claimant has the following severe impairments: multiple
> sclerosis, relapsing-remitting type with mild neurocognitive
> disorder; migraines; depression; anxiety; and post-traumatic stress
> disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance; frequently stoop, kneel, crouch, and crawl; should avoid all exposure to hazards such as working in unprotected heights or being around or operating dangerous moving equipment such as power saws and jack hammers; no commercial driving; can constantly understand, remember, and carry out simple instructions; can up to occasionally understand, remember, and carry out instructions that are detailed or complex in nature; can maintain concentration, persistence, and pace for routine tasks in a work environment that does not require mechanized pace for strict production quotas (i.e., no piece rate-type work, but goal oriented work is acceptable); and no limits on interacting with others.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 15, 1985 and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2019, through the date of this decision (20 CFR 404.1520(g)).

(ECF No. 8, PageID #: 44, 45, 47, 55, 56, 57).

**V.   Law & Analysis**

**A.  Standard of Review**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B.  Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to DIB: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can

9

perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

### C.  Discussion

Claimant raises two issues on appeal. First, she challenges the ALJ's determination that she did not meeting Listing 11.09 at Step Three of the disability framework. (ECF No. 10, PageID #: 1208–11). Second, she challenges the ALJ's treatment of several expert opinions in determining the RFC. (ECF No. 10, PageID #: 1212–18). Specifically, Claimant challenges the ALJ's treatment and analysis of three opinions authored by Dr. Frye, Mr. Hart and Ms. Northrup, and Dr. Carrabine. (ECF No. 10, PageID #: 1212–18).

#### a.  Listing 11.09

Claimant first argues the ALJ failed to adequately consider Listing 11.09 or provide support for her finding that Claimant did not meet the listing at Step Three. (ECF No. 10, PageID #: 1208). She claims she suffers from a marked or extreme limitation in her upper extremities that either meets or medically equals Listing 11.09. (ECF No. 10, PageID #: 1209). Additionally, Claimant argues she also has marked limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace. (ECF No. 10, PageID #: 1211–12).

The Commissioner responds that the ALJ reasonably determined Claimant's impairments do not meet a listing, and substantial evidence supports this decision. (ECF No. 12, PageID #: 1230–32). The Commissioner points to the record and state agency opinions, arguing they support the ALJ's finding that Claimant does not meeting Listing 11.09. (ECF No. 12, PageID #: 1231–32).

If a claimant shows they meet or medically equal a listing in the Social Security Administration's Listing of Impairments, they are automatically considered disabled. *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010) ("At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings in the Listing of Impairments."); § 404.1520(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled."). Here, Claimant argues she met or medically equaled Listing 11.09 for multiple sclerosis. (*See* ECF No. 10, PageID #: 1209, 1211). To meet or equal Listing 11.09, a claimant must demonstrate:

> (1) Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities" ("Paragraph A"), or
>
> (2) a Marked limitation (see 11.00G2) in physical functioning in one of the following categories:
>
> > (1) Understanding, remembering, or applying information (see 11.00G3b(i)); or
> >
> > (2) Interacting with others (see 11.00G3b(ii)); or
> >
> > (3) Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> >
> > (4) Adapting or managing oneself (see 11.00G3b(iv))." ("Paragraph B").

11

§ Pt. 404, Subpt. P, App. 1, Listing 11.09.

The ALJ found that Claimant failed to meet the Paragraph A and B criteria necessary to meet or medically equal Listing 11.09. (ECF No. 8, PageID #: 45–46). Claimant now challenges these findings, and the Court will review each in turn.

### i.  Paragraph A

Claimant first argues that the ALJ incorrectly determined she does not meet Paragraph A criteria demonstrating disorganization of motor function in two extremities, resulting in an extreme limitation. (ECF No. 10, PageID #: 1209). She cites various records she believes prove she has at least marked limitations in her upper extremities. (ECF No. 10, PageID #: 1209–10). Additionally, she claims the ALJ's single sentence concluding Claimant does not meet Paragraph A criteria is in "stark contrast" with her review of other listings. (ECF NO. 10, PageID #: 1209).

The Commissioner responds that substantial evidence supports the ALJ's finding that Claimant did not have disorganization of motor function in two extremities. (ECF No. 12, PageID #: 1231). The Commissioner points out that the ALJ repeatedly referenced normal motor strength and grip strength in both arms and hands. (ECF No. 12, PageID #: 1231). Finally, as the state agency consultants reached the same conclusion as the ALJ—and the ALJ noted this—substantial evidence supports her determination. (ECF No. 12, PageID #: 1231).

The ALJ found that Claimant did not meet the Paragraph A criteria at Step Three for two reasons. First, she noted that there was "no evidence" of disorganization of motor functions in two extremities in the record. (ECF No. 8, PageID #: 45). Second, she noted that the state agency medical consultants reviewed the record and also concluded that Claimant did not meet any of the listings, including Listing 11.09. (ECF No. 8, PageID #: 45).

"It's well-established that a reviewing court conducts a holistic review of the ALJ's decision and may look to findings elsewhere in the opinion to support Step Three conclusions." *Anderson v. Comm'r of Soc. Sec.*, No. 1:21-CV-1471, 2022 WL 4545188, at *2 (N.D. Sept. 29, 2022) (citing *Immke v. Saul*, No. 1:18CV2218, 2020 WL 1940849, at *6 (N.D. Ohio Apr. 22, 2020)).[1] Indeed, the ALJ reviewed Claimant's physical health and motor functions at length in the remainder of the decision. She noted that while Dr. Carrabine found "very mildly decreased" motor strength in her lower left extremity, she had "normal" motor strength in the rest of her arms and legs and 5/5 grip strength in both hands. (ECF No. 8, PageID #: 48 (citing Ex. 3F)). The ALJ also noted that Lauren Junk, A.N.P., reported the same motor and grip strength findings in January 2020. (ECF No. 8, PageID #: 49 (citing Ex. 3F)). She also noted that Claimant ambulated on her own as of July 2020. (ECF No. 8, PageID #: 51 (citing Exs. 12F, 17F)). These findings are consistent with her determination that Claimant did not have disorganization of motor function in two extremities as is required to meet the Paragraph A criteria.

Claimant's references to various records in support of her argument are unavailing. The records merely highlight that substantial evidence may support an alternative conclusion. But this is not enough to disturb the ALJ's finding. As long as substantial evidence supports the Commissioner's decision, the Court must defer to it, "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to

---

[1] Thus, Claimant's argument that the ALJ spent more time discussing Listings 12.02, 12.04, 12.06, and 12.15 at Step Three is unavailing.

13

reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted).

Moreover, Claimant's reply brief argument that the ALJ "cherry-picked" the record for favorable evidence also fails. (ECF No. 13, PageID #: 1241–42). Claimant references a number of records and symptoms she argues the ALJ did not consider, including hallucinations and paranoia. (ECF No. 13, PageID #: 1242). However, the ALJ did reference these records in her decision: "[Claimant's] thought content contained paranoia and auditory hallucinations." (ECF No. 8, PageID #: 51; *see also* PageID #: 50 ("She reported feeling like people were trying to hurt her.")). Additionally, all the records she cites were a part of exhibits the ALJ reviewed and cited in her opinion. As ALJs are not required to reference every piece of evidence in their decisions, this ALJ did not err in failing to mention every record Claimant cites. *See Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *Jenkins v. Colvin*, No. 5:15-CV-1165, 2016 WL 825909, at *9 (N.D. Ohio Feb. 11, 2016) ("Although an ALJ is required to consider all of the evidence in the record, [s]he is not required to discuss each item of evidence in her opinion." (citations omitted)), *report and recommendation adopted*, No. 5:15 CV 1165, 2016 WL 815625 (N.D. Ohio Mar. 1, 2016). Thus, the Court rejects Claimant's argument that the ALJ cherry-picked the record. As substantial evidence supports the ALJ's Paragraph A finding, the Court will not disturb it.

### ii. Paragraph B

Claimant argues the ALJ erred in her "B criteria" evaluation of Listing 11.09[2] and specifically challenges the ALJ's finding she does not have marked limitations in (1) understanding, remembering, or applying information or (2) concentrating, persisting, or

---

[2] Listing 11.09 requires a marked limitation in one of the Paragraph B categories.

maintaining pace. (ECF No. 10, PageID #: 1211). The Commissioner argues the ALJ reasonably concluded that Claimant did not have marked limitations in any of the Paragraph B categories. (ECF No. 12, PageID #: 1232).

As discussed above, claimants must demonstrate a marked limitation of one of the following to satisfy Paragraph B: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; adapt or manage oneself. § Pt. 404, Subpt. P, App. 1, Listing 11.09(B). "A marked limitation may arise where several activities or functions are impaired or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652–53 (6th Cir. 2009). A moderate limitation is defined as having a fair ability to function independently, appropriately, effectively, and on a sustained basis in an area. *See* § Pt. 404, Subpt. P, App. 1, Listing 12.00(F)(2)(c)

Understanding, remembering, or applying information "refers to the abilities to learn, recall, and use information to perform work activities." § Pt. 404, Subpt. P, App. 1, Listing 11.00(G)(3)(b)(i). "Examples include: understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions." *Id.*

Likewise, concentrating, persisting, or maintaining pace relates to "the abilities to focus attention on work activities and to stay on-task at a sustained rate." § Pt. 404, Subpt. P, App. 1, Listing 11.00(G)(3)(b)(iii). Examples include "initiating and performing a task that you understand

and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." *Id.*

Claimant argues that she suffers from "at least marked limitations" in her ability to understand, remember, or apply information.  (ECF No. 10, PageID #: 1211).  She cites various records in support of her argument, including an expert opinion that stated she suffered from extreme limitations in her daily activities. (ECF No. 10, PageID #: 1211).

The ALJ reviewed the record and found that Claimant had a moderate limitation in this area. (ECF No. 8, PageID #: 46).  While she acknowledged that Claimant complained of memory problems, she also referenced a report from Dr. Frye that Claimant had a "mild" neurocognitive disorder. (ECF No. 8, PageID #: 46).  The ALJ also pointed out that the notes of Mr. Brian Spence, A.P.R.N., C.N.P., demonstrated that Claimant's thought process was consistently goal direct, linear, and coherent. (ECF No. 8, PageID #: 46).  Mr. Spence also noted that Claimant's insight was consistently good and that her judgment was consistently not impaired. (ECF No. 8, PageID #: 46).  The ALJ found that Claimant's daily activities of caring for three young children[3] and

---

[3] Claimant also argues she cannot independently care for her children and that the ALJ's reference to this activity is unsupported by the record. (ECF No. 10, PageID #: 1210–11). She cites several cases to argue that this activity "does not constitute [the] ability to engage in substantial, gainful activity precluding establishment of disability." (ECF No. 10, PageID #: 1211; *see also* ECF No. 13, PageID #: 1242 ("[I]ntermittent activities or chores do not prove that a claimant is able to complete full-time work.")). But this argument misses the mark. First, while Claimant disagrees with the nature of the care she provides, she does not deny her caretaking responsibilities. Second, the ALJ did not use this activity to support a finding that Claimant was capable of "substantial, gainful activity" but that Claimant had only moderate limitations in her ability to (1) understand, remember, or apply information and (2) concentrate, persist, or maintain pace. As Claimant's argument jumps the gun to the ultimate question of disability, it fails.

participating in treatment demonstrated adequate reasoning and judgment capabilities. (ECF No. 8, PageID #: 46). For these reasons, the ALJ concluded that Claimant had only a moderate limitation in understanding, remembering, or applying information.

The record at large supports the ALJ's determination. Appointment notes from Dr. Carrabine and Dr. Zubair Ahmed, M.D., demonstrate Claimant was alert and cooperative. (ECF No. 8, PageID #: 299, 310). Following Dr. Ahmed's Botox prescription for migraines, Claimant reported significant improvement and reported a decrease from fifteen headaches per month to seven. (ECF No. 8, PageID #: 335–36). By May 2020, Mr. Spence reported that Claimant's thought process was goal directed, linear, and coherent and that she did not exhibit any abnormal thought content. (ECF No. 8, PageID #: 1163). Claimant began taking Prozac after this appointment and showed significant improvement in her mental health throughout the remainder of 2020. (*See* ECF No. 8, PageID #: 1141, 1155). By October 2020, Claimant reported she felt "more normal now than I ever have," and Mr. Spence again noted her thought process was goal directed, linear, and coherent. (ECF No. 8, PageID #: 1141, 1142). He also observed Claimant's judgment was not impaired and that her behavior was calm and pleasant. (ECF No. 8, PageID #: 1143)

Substantial evidence therefore supports the ALJ's determination that Claimant had only a moderate limitation in understanding, remembering, or applying information. Further, since the ALJ provided several reasons for this conclusion, the Court finds that she adequately explained her finding and will not disturb her decision on this matter.

Claimant also argues that she suffers from "at least marked limitations" in her ability to concentrate, persist, or maintain pace. (ECF No. 10, PageID #: 1211). She references the same records she used in support of her argument that she has marked limitations in understanding, remembering, or applying information. (ECF No. 10, PageID #: 1211). Additionally, Claimant

argues Mr. Spence opined she had "marked limitations in maintaining concentration, persistence or pace and maintaining social functioning." (ECF No. 10, PageID #: 1211).

The ALJ found that Claimant had a moderate limitation in concentrating, persisting, or maintaining pace for several reasons. (ECF No. 8, PageID #: 46). First, she noted that despite Claimant's subjective allegations of distraction, Mr. Spence reported Claimant's thought process was consistently goal directed, linear, and coherent. (ECF No. 8, PageID #: 46). While the ALJ then noted that Claimant experiences paranoia and auditory hallucinations, she pointed out that Claimant also takes care of her children and said that she was "good at being a mom." (ECF No. 8, PageID #: 46). Based on these facts, the ALJ found that Claimant had only moderate limitations in this area.

The record supports this finding. Throughout her treatment, Claimant consistently demonstrated a cooperative and accessible demeanor; normal speech; goal directed, linear, and coherent thought process; calm and pleasant behavior and functioning, and good insight. (ECF No. 8, PageID #: 1142–43, 1146–47, 1150–51, 1156–57, 1163). While Mr. Spence opined that Claimant had marked limitations in maintaining concentration, persistence, or pace, the ALJ discounted his opinion since Claimant's mental health status examinations did not support the finding. (ECF No. 8, PageID #: 52, 1076). Additionally, Mr. Spence recommended this in August 2020, before Claimant began taking 40 mg of Prozac, which significantly improved her mental health. (*See* ECF No. 8, PageID #: 1077, 1141). By October 2020, Claimant reported that she felt "more normal now than I ever have." (ECF No. 8, PageID #: 1141). Thus, substantial evidence supports the ALJ's finding that Claimant had only moderate limitations in this area. Again, because she explained her finding and provided several examples in support, the Court finds that she adequately explained her determination.

18

Substantial evidence supports the ALJ's decision that Claimant did not meet or medically equal Listing 11.09. Accordingly, the Court will not disturb the opinion now.

### b. Opinion Evidence

Claimant challenges the ALJ's treatment of three expert opinions from Dr. Frye, Mr. Hart and Ms. Northrup, and Dr. Carrabine. (ECF No. 10, PageID #: 1212–18). The Court will review each claim in the following subsections.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. § 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. § 404.1520c(b)(2).

Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." §§ 404.1520c(c), 404.1520c(b)(2) ("The factors of supportability [] and consistency [] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

### i. Frye Opinion

Claimant first challenges the ALJ's finding that Dr. Frye's opinion is not fully persuasive, arguing substantial evidence does not support the determination. (ECF No. 10, PageID #: 1212–15). Claimant specifically argues the ALJ interpreted the findings of the Dr. Frye's testing, substituted her lay opinion for Dr. Frye's opinion, and made a medical judgment by justifying her determination with Claimant's later use of Prozac. (ECF No. 10, PageID #: 1213–15).

The Commissioner argues that substantial evidence supports the ALJ's finding that Dr. Frye's opinion is not fully persuasive. (ECF No. 12, PageID #: 1233). As the opinion did not contain any specific functional limitations, the Commissioner claims the ALJ was permitted to discount the "vague" opinion. (ECF No. 12, PageID #: 1233 (citing *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 422, 431 (6th Cir. 2018); *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 117 (6th Cir. 2016); *Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x. 422, 431 (6th Cir. 2018); *Harris v. Comm'r of Soc. Sec.*, 2012 WL 4505853 at *3 (N.D. Ohio Sept 28, 2012))). Further, the Commissioner points out that Dr. Frye made an improper disability finding when she noted Claimant's symptoms "would . . . prohibit her ability to successfully engage in full time employment." (ECF No. 12, PageID #: 1233 (citing § 404.1520b(c)(3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007))).

The ALJ reviewed the notes from Dr. Frye's appointment and summarized her psychological recommendations:

> Dr. Frye made several recommendations including the following: the claimant is encouraged to reapply for Social Security Disability benefits. Her cognitive and emotional symptoms represent at least a moderate barrier to her ability to consistently engage in full time competitive employment. Her additional physical symptoms from the MS, including her significant daytime fatigue, as well as her additional medical concerns (migraine headaches, vascular

> problems with her legs) will also further prohibit her ability to successfully engage in full time employment (4F/11).

(ECF No. 8, PageID #: 49). Although the ALJ did not use quotations marks, this is a near identical copy of Dr. Frye's recommendation in her report. (*See* ECF No. 8, PageID #: 343). The ALJ found this opinion not fully persuasive for the following reasons:

> she did not use policy compliant verbiage and standards to express her opinion. Nevertheless, the undersigned interpreted her findings to mean that the claimant has limits in her ability to perform the essential mental tasks of work, but the limits are not more severe than those expressed in the stated mental residual functional capacity. Furthermore, Dr. Frye did not have the benefit of reviewing the claimant's medical records (at 4F/10, Dr. Frye notes that she received no medical records to review) while the record supports the claimant has greater abilities than those expressed by the opinion. Significantly, at the time of Dr. Frye's assessment, the claimant was not taking any psychotropic medications including any medication for her mood concerns. However, in May 2020, the claimant started to take Prozac and by October 2020, the claimant's symptoms had significantly improved with Prozac 40 mg (see below). Thus, Dr. Frye's opinion is not consistent with the subsequent medical evidence of record showing improvement with Prozac.

(ECF No. 8, PageID #: 49).

The ALJ first correctly noted that Dr. Frye "did not use policy compliant verbiage and standards to express her opinion." (ECF No. 8, PageID #: 49). Indeed, Dr. Frye did not offer any specific limitations the ALJ could adopt in her RFC, and Claimant does not argue otherwise. (*See* ECF No. 8, PageID #: 340–46). The ALJ accordingly wrote that she "interpreted [Dr. Frye's] findings to mean that the claimant has limits in her ability to perform the essential mental tasks of work, but the limits are not more severe than those expressed in the stated mental residual functional capacity." (ECF No. 8, PageID #: 49). This is a reasonable interpretation of Dr. Frye's note that Claimant's "cognitive and emotional symptoms represent at least a moderate barrier to her ability to consistently engage in full time competitive employment." (ECF No. 8, PageID #:

343). Thus, Claimant's argument that the ALJ improperly "interpreted" Dr. Frye's opinion in unavailing. (*See* ECF No. 10, PageID #: 1212–13). ALJs have a duty to interpret and make sense of medical opinions in the record, and her analysis does not constitute her "playing doctor" as Claimant alleges.[4] *See* § 404.1520c. Nor was her conclusion that Claimant's mental health improved a "medical judgment" as Claimant argues. (*See* ECF No. 10, PageID #: 1215). The record demonstrates that Claimant's mental health symptoms improved after she began taking Prozac, and by October 2020, she told a provider she felt "more normal now than I ever have." (ECF No. 8, PageID #: 1141). Substantial evidence supports the ALJ's interpretation of Dr. Frye's opinion.

Moreover, the ALJ provided additional reasons for finding the opinion not fully persuasive. She noted that Dr. Frye's opinion was not based on any other records since she did not have access to the record at the time of her opinion. (ECF No. 8, PageID #: 49). The ALJ found that Dr. Frye's opinion was inconsistent with other records which demonstrated "greater abilities" than Dr. Frye noted. (ECF No. 8, PageID #: 49). Finally, the ALJ found that Claimant's mental health significantly changed in the year following Dr. Frye's opinion since she began taking Prozac in

---

[4] Claimant vaguely argues the ALJ improperly rejected this opinion since it was the only opinion to provide certain limitations. (*See* ECF No. 10 PageID #: 1214). However, Claimant fails to specify what limitations this opinion offered that others did not and cites out-of-district cases to support this failing argument.

May 2020. (ECF No. 8, PageID #: 49). The ALJ therefore found that Dr. Frye's opinion was inconsistent with the medical record following her examination. (ECF No. 8, PageID #: 49).[5]

Substantial evidence supports the ALJ's finding that this opinion was not fully persuasive. Thus, the Court will not disturb her decision.

### ii. Hart and Northrup Opinion

Claimant next challenges the ALJ's treatment of a functional assessment completed by Mr. Hart and Ms. Northrup in June 2020. (ECF No. 10, PageID #: 1215–17). Claimant argues the ALJ "provided poor reasons at best as to why the assessment was not fully persuasive" and improperly relied on "positive examination signs" and "undercut[]" the evidence by finding that Claimant did not have back or knee impairments. (ECF No. 10, PageID #: 1215). Finally, Claimant contends that the assessment was the only "in-person physical exam that is considered valid" and that a functional capacity evaluation is a reliable test. (ECF No. 10, PageID #: 1215–16 (citing *Phillips v. Comm'r of Soc. Sec.*, 1:08CV333, 2009 WL 2486010, *6 (S.D. Ohio Aug. 11, 2009); *Torrez v. Comm'r of Soc. Sec.*, 1:07-CV-932, 2008 WL 4587117, *10 (W.D. Mich. Oct. 14, 2008))). The Commissioner argues that substantial evidence supports the ALJ's determine that the assessment was not fully persuasive and points to a number of reasons the ALJ made her finding. (ECF No. 12, PageID #: 1234–36).

---

[5] Claimant makes additional cursory arguments in her reply brief alongside her arguments concerning Dr. Frye's opinion. She claims that substantial evidence does not support the RFC because it includes a limitation on complex instructions and social interactions even though no expert opined about this. (ECF No. 13, PageID #: 1244). Additionally, she attacks the ALJ's reliance on an "internally inconsistent" opinion from Irma Johnston, Psy.D. However, Claimant waived these arguments for failure to raise them in her initial brief on the merits. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("We have consistently held, however, that arguments made to us for the first time in a reply brief are waived.") (citing *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004)); *see also Braun v. Comm's of Soc. Sec.*, No. 1:20-CV-00374-JPC, 2021 WL 8016061, at *12 (N.D. Ohio Apr. 7, 2021) ("It is well established that arguments made for the first time in a reply brief are waived.").

The ALJ summarized the functional limitations in the assessment Mr. Hart and Ms. Northrup authored:

> On June 24, 2020, the claimant attended a functional capacity evaluation conducted by Jamie Hart, PT, AT, DPT, and Sherrie Northrup, AT. Mr. Hart and Ms. Northrup determined that the claimant can work 5 hours a day; sit for 3 to 4 hours, 40 minute duration maximum; stand for 3 to 4 hours, 30 minute duration maximum; and walk for 3 to 4 hours, frequent moderate distances; postural activities range from "not at all," "minimally occasional," to "occasional"; occasional grasping with the bilateral hands; occasionally lift up to 14.8 pounds; and occasionally carry 27 pounds on the right and 17 pounds on the left (9F).

(ECF No. 8, PageID #: 50). She then explained why the opinion was not fully persuasive:

> Although Mr. Hart and Ms. Northrup are not acceptable "medical sources" under the current SSA rules, the undersigned considered their input. In doing so, their input is not fully persuasive because it is internally inconsistent. Mr. Hart and Ms. Northrup determined that the claimant could only work 5 hours a day, but she could sit for 3 to 4 hours (40 minute duration maximum), stand for 3 to 4 hours (30 minute duration maximum), and walk for 3 to 4 hours (frequent moderate distances). They did not adequately explain why the claimant could only work 5 hours a day, but sit, stand, and walk up to 4 hours each. Hence, conceivably, the claimant's residual functional capacity could be performed. Their input is not fully persuasive because it is not supported by the objective medical evidence. On examinations of the claimant at the Oak Clinic for Multiple Sclerosis, the claimant's gait was consistently "slightly" wide-based consistent with some balance difficulties; her motor strength in the upper extremities and the right lower extremity was consistently "normal," and motor strength in her left lower extremity was consistently "very mildly decreased"; and she consistently had 5/5 (normal) grip strength bilaterally (see above). In addition, the claimant saw Dr. Carrabine on July 24, 2020 and although the claimant had some gait difficulty due to balance and some general weakness (left side greater than the right), the claimant denied falls or injury and she ambulated "on her own" (see below). Furthermore, during the assessment, the therapists noted remarks made by the claimant such as: "my back feels like it is on fire," "my back is killing me," "it feels like my back is getting electrocuted or something," "I feel off balance, wobbly," "my left knee is really bugging me today," and "I feel like I am about to fall." Although Ms. Junk restarted the claimant's Baclofen on January 30, 2020

because the claimant reported some stiffness in her legs and back, the claimant does not have a back or knee impairment. Therefore, Mr. Hart and Ms. Northrup's conclusion that the claimant exerted "full effort" is not fully persuasive given the above-mentioned remarks made by the claimant to them. While they provided a Heart Rate Summary to conclude that the claimant performed at full capability, they did not adequately explain how they came to that conclusion. From all of this, their input is not fully persuasive.

(ECF No. 8, PageID #: 50–51).

The ALJ provided several reasons for discounting the opinion. To start, she noted a major internal inconsistency in the opinion: the experts recommended Claimant work five hours a day but also noted she could sit, stand, and walk for three to four hours each every day. (ECF No. 8, PageID #: 50). The ALJ also noted the opinion was unsupported by the objective medical record and specifically referenced the findings of Dr. Carrabine who noted "normal" motor strength in most extremities and 5/5 grip strength. (ECF No. 8, PageID #: 50). The ALJ also noted that Claimant denied falls or injury to Dr. Carrabine and reported that she ambulated on her own. (ECF No. 8, PageID #: 50).

Notably, the ALJ observed that Claimant reported significant back and knee impairments for the first time during the assessment. (ECF No. 8, PageID #: 50–51). Claimant made the following comments during the assessment: "my back is killing me," "it feels like my back is getting electrocuted or something," "I feel off balance, wobbly," "my left knee is really bugging me today," and "I feel like I am about to fall." (ECF No. 8, PageID #: 1065–66). The ALJ noted these allegations and concluded that the experts' statement that Claimant exerted "full effort" was not persuasive since Claimant alleged new impairments. (ECF No. 8, PageID #: 50–51).

Claimant's argument that the ALJ provided "poor reasons" for her determination and improperly relied on positive findings is unavailing. (*See* ECF No. 10, PageID #: 1215). The ALJ properly evaluated the supportability and consistency of the opinion, as she was required to do

under Social Security Administration regulations. *See* § 404.1520c. Further, the positive findings the ALJ referenced—from Dr. Carrabine's medical notes—demonstrated that the assessment was unsupported by the objective record which was characterized by mild impairments. (*See* ECF No. 8, PageID #: 50). Finally, Claimant's argument that this opinion is inherently reliable is unpersuasive. (*See* ECF No. 10, PageID #: 1216). The ALJ did not challenge the nature of the assessment, but rather, its results, which she found were inconsistent with and unsupported by the record. Substantial evidence supports this finding. Likewise, the ALJ is not required to find an opinion persuasive, even if it is the only physical examination in the record as Claimant appears to argue. Whether an expert had an examining relationship with the claimant is only one factor ALJs may consider, and it is not dispositive. *See* § 404.1520c(c)(5). Further, Claimant cites no case law demonstrating that ALJs should consider opinions with physical examinations differently than others. The Court therefore rejects Claimant's arguments concerning this opinion.[6]

Substantial evidence supports the ALJ's determination of Dr. Frye's opinion. Thus, the Court will not disturb the opinion on this claim.

### iii. Carrabine Opinion

Claimant finally challenges the ALJ's treatment of Dr. Carrabine's September 2020 opinion reviewing Mr. Hart and Ms. Northrup's functional capacity assessment. (ECF No. 10, PageID #: 1217–18). She argues the ALJ "failed to appropriately articulate why Dr. Carrabine's opinion was not fully persuasive" and claims that when a medical source signs or co-signs another opinion, they simultaneously create a new opinion and adopt the contents of the original opinion.

---

[6] In her reply brief, Claimant appears to argue that the functional assessment is a valid assessment because it is "backed by objective metrics," rather than her subjective allegations of knee and back pain. (ECF No. 13, PageID #: 1246). Regardless of whether this is true, Claimant's subjective allegations of pain were not the sole reason the ALJ discounted Dr. Frye's opinion. Thus, this argument does not change the fact that substantial evidence supports the ALJ's finding.

(ECF No. 10, PageID #: 1217 (citing *Pater v. Comm'r of Soc. Sec.*, No. 1:15 CV 1295, 2016 WL 3477220, at *7 (N.D. Ohio June 27, 2016); *Robinson v. Comm'r of Soc. Sec.*, No. 2:14-cv-01682, 2015 WL 5768483, at *3 (S.D. Ohio Sept. 30, 2015); *Rueda v. Berryhill*, No. 1:17cv1878, 2018 WL 3304626, at *19 (N.D. Ohio June 22, 2018)). Claimant also contends the ALJ failed to use any of the § 416.920c factors in its analysis of the opinion and that substantial evidence does not support the ALJ's determination. (ECF No. 10, PageID #: 1218).

The Commissioner argues that the ALJ's finding is supported by substantial evidence. (ECF No. 12, PageID #: 1236). As Dr. Carrabine agreed with the results of the functional assessment, the Commissioner contends that the opinions were "identical" and that the ALJ's rationale for rejecting the assessment also applies to Dr. Carrabine's opinion. (ECF No. 12, PageID #: 1236). The Commissioner also claims that the ALJ provided additional rationale for rejecting Dr. Carrabine's opinion in a paragraph summarizing the record, following her mention of Dr. Carrabine's opinion. (ECF No. 12, PageID #: 1236). Finally, the Commissioner argues that the ALJ was not required to use the term "supportability" to comply with Social Security Administration regulations, but instead met the requirements by explaining why the opinion was unsupported by and inconsistent with the record. (ECF No. 12, PageID #: 1237).

 The ALJ first discussed Mr. Hart and Ms. Northrup's opinion, as addressed above. (ECF No. 8, PageID #: 50–51). The ALJ did not find the opinion fully persuasive for the reasons previously mentioned, including the fact that Claimant had not exhibited back or knee impairments until the day the opinion was issued. (*See* ECF No. 8, PageID #: 50–51).

Next, the ALJ summarized and analyzed Dr. Carrabine's opinion: "On September 11, 2020, Dr. Carrabine reported that he agreed with the functional capacity evaluation results of June

24, 2020 (11F). Even so, the undersigned still finds that the input from Mr. Hart and Ms. Northrup input is not fully persuasive for the reasons mentioned above." (ECF No. 8, PageID #: 52).

Claimant takes issue with the fact that the ALJ did not explain her finding that Dr. Carrabine's opinion was not fully persuasive. (ECF No. 10, PageID #: 1217–18). However, the ALJ's reference to her review of Mr. Hart and Ms. Northrup's opinion clearly demonstrates why she discredited Dr. Carrabine's opinion. As discussed above, the ALJ found Mr. Hart and Ms. Northrup's limitations unpersuasive since they were based on the finding that Claimant exerted full effort despite her complaints of new impairments that day. (ECF No. 8, PageID #: 51). Additionally, the ALJ found internal inconsistencies in the opinion including the experts' recommendation that Claimant could work up to five hours but could sit, stand, and walk for three to four hours each. (ECF No. 8, PageID #: 50). As Dr. Carrabine's opinion agreed with the functional assessment, the ALJ's reference to her prior review and findings of the assessment explained that she also found Dr. Carrabine's opinion unpersuasive.

Moreover, Dr. Carrabine's opinion offered no new limitations for the ALJ to review. Additionally, Dr. Carrabine's notes are difficult to interpret. While it is clear he agrees with the evaluation of Mr. Hart and Ms. Northrup, he also lists various medical conditions without any explanation. (*See* ECF No. 8, PageID #: 1080). For example, part of his note states, "Subsequent difficulties with balance, (as per FCE as well) cognition, depression. Neurogenic bladder, weakness." (ECF No. 8, PageID #: 1089). As these are not recommended limitations, the ALJ was not required to review them under § 404.1520c. *See* § 416.913(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions."); *Andrews v. Comm'r of Soc. Sec.*, No. 5:20-cv-1512, 2021 WL 3375538, at *20 (N.D. Ohio July 14, 2021)

("Because Dr. Dallara's evaluation didn't set forth functional limitations, it was not an opinion that was subject to 20 C.F.R. § 416.920(c)."); *see also Goode v. Comm'r of Soc. Sec.*, No. 1:20-CV-02240-JDG, 2021 WL 5919939, at *18 (N.D. Ohio Dec. 15, 2021) (finding that an expert's diagnosis of "severe cervical canal stenosis from C2-3 to C5-6" and  note that the claimant had "signs and symptoms of cervical myelopathy" did not constitute medical opinions under Social Security Administration regulations). Accordingly, the ALJ did not err in failing to provide additional analysis of Dr. Carrabine's note.

Substantial evidence supports the ALJ's treatment of this opinion. The Court will therefore not disturb her finding.

**VI.    Recommendation**

Based on the foregoing, it is RECOMMENDED that that the Commissioner's final decision be AFFIRMED.

Dated: May 24, 2023

*s/ Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019).